23-1218 Verplanck Fire District v. Dyckman. May it please the court, my name is Brian Chute, I represent Troy Dyckman here today. As you know, the district court dismissed all three causes of action of the complaint. We challenge the latter two. The dismissal of the Saraki claim, which is the second cause of action. The dismissal of the General Maritime claim, which is the third cause of action. In this case, which arises from a collision between two vessels on the Hudson River in the vicinity of Croton Point. Unless the court points me elsewhere, I'll start with the Saraki claim. The district court's ruling is logic. It's at page 383 of the appendix. The key, the court wrote, to whether the plaintiff had a Saraki claim, was whether the claimant is an independent contractor under New York law. The authority cited for that proposition was the authority cited by Verplanck Fire District, VFD, which was the unreported decision in Radut rendered in 2004, which in fact didn't address that issue at all. Our point is threefold as to why that was error. First, the actual holding in Saraki, the key of Saraki, said the Supreme Court itself in that case, is whether the claimant or claimant, plaintiff or claimant, is doing seaman's work incurring a seaman's hazards. Any worker who does so is entitled to be a Saraki seaman, is entitled to the promise that the vessel will be seaworthy. Per Saraki itself, they did not find in the plaintiff's favor because he was an independent contractor. They found in his favor in spite of the fact that he was an independent contractor. The court in fact wrote, the Supreme Court in Saraki, there could be no question of petitioner's liability for respondent's injuries incurred as they were if he had been in petitioner's employ rather than hired by an independent contractor. Second. On this question of whether or not it requires that the person have the status of an independent contractor, if we accept that that's not what Saraki required, but instead that it required that the person is performing a seaman's duty, have you alleged that? I mean, because this question of that he was performing a seaman's duty because he was tying off the vessel at the time of the accident, that wasn't raised below, was it? Yes, it was. Let me two-fold, Your Honor. The motion to which we responded, we are responding to a motion. There is no claim in the motion, in their motion papers, that he was not performing a seaman's work. There is no claim that he was not incurring a seaman's hazard. The claim was that doesn't matter. This is only for independent contractors. If you look at our position, it's only four pages of the appendix. It starts at 341, it goes to 344, and it's very short. And it says he's entitled to Saraki seaman's status because he's incurring a seaman's hazard, he's doing a seaman's work, and the second reason, there's no claim, there's no case, rather. Did it say he's doing a seaman's work or did it say he's enduring the hazards of the sea? I don't think it said he's doing seaman. He didn't say anything about tying off the, he had said it in his deposition, but he didn't say anything about that in his responding papers. Okay, I'm answering that two ways. One, it exactly said he's doing a seaman's work. Did it give as an example of the seaman's work that he was doing that he was tying off the vessel and that he was, in fact, trying to avoid collision at the time of the accident? No, he did not. No, it did not. But the reason it did not, Your Honor, is there was no claim to the contrary to respond to. So we gave the legal standard, he's doing a seaman's work. We did not give the instance of why he was doing the seaman's work or in what respect. But to the claim that this is a new contention, when you look at their motion papers, what we're responding to, page 310 of the appendix, it's the first two sentences of their motion papers. I'm going to quote from that. VFD volunteer firefighter Troy Dyckman, this is the second sentence of their materials, stuck his leg out of Marine One to allegedly stop the vessel from coming into contact with a Westchester County police vessel. He's trying to minimize the collision, and that's why he's injured. So, and I'll add one more thing, two more things. One, there's no, no one has yet given any reason, any logic. We can think of reasons why a vessel owner might owe a greater duty of care to its own employee. No one has yet suggested a reason why it should owe a lesser duty of care to its own employee than to a virtual stranger on board. The last point on this issue, Siraki, the Supreme Court has decided this. The Reed versus S.S. Yacob, 1963 Supreme Court of the United States, specifically ruled that even though, in that case, the plaintiff was indeed an employee of the Barebone Charter, an employee of the Vessel Owner ProHawk Bike, the same Siraki duty was owed, said the Supreme Court of the United States. With respect to the cause of action, general maritime cause of action, of course there's a general maritime cause of action in favor of basically anyone who's injured at sea, or more accurately, anyone whose presence is not inimical to the interests of the vessel owner, is owed a duty of refraining from negligence. The Constitution, Article 6, Clause 2, does not say, there shall be, whichever law has the great, whichever jurisdiction has the greater interest in applying its law, that law shall be supreme. It says, federal law shall be supreme, it is the law of the land. And in Pope and Talbert versus Horn, the Supreme Court specifically said, that yes, state law can supplement maritime law, where it's not inconsistent with maritime law. It cannot, the Supreme Court wrote, it cannot deprive a person of a substantial right in admiralty, which is exactly what is being argued here, that New York's workers' compensation law can deprive this plaintiff of this claimant of his maritime right. I see I'm at my limit, I will point out that yes, the appellee is correct in saying that there are cases that go both ways, in terms of whether a state can do that. But both ways, only in the sense that there's one circuit, and only one circuit court, in one case, Brockington, has reached the conclusion that workers' compensation, a state remedy, can bar a federal claim. That's the only circuit court of its kind. Which circuit was that? That was the 11th Circuit, Your Honor, in Brockington in 1990. And on the other side of the ledger, you have the 5th Circuit, at least four times, King, Roberts, Green, Thibodeau, the 3rd Circuit in Purnell, lower courts in the 3rd and 4th Circuit, and this court, yes, in dictum, but this court, in Lopez, where it said it did not read the New York workers' compensation law to bar the federal claim, but if it did, that would clearly be violative of the supremacy clause. And I would add, Your Honor, your decision in Gravatt v. City, rather on behalf of the unanimous panel in 2000, the court there ruled, not for the first time, but there ruled that even when the Longshoremen's Corporate Workers' Compensation Act, a federal law, bars recovery, it does not do so with respect to the defendant's liability as vessel owner. It still remains liable as vessel owner. And that's when you have a federal bar, not a state bar. And I see I've gone over my time, and thank you very much. Thank you very much. May it please the court. My name is Garrick Russell for the Pelley, the Verplank Fire District. Our client is not a commercial ship owner or business. It is an all-volunteer firefighter organization for the town of Verplank, New York. It's important to note that although Judge Halpern dismissed the Appellant's Jones Act, Suraki Seaman, and general maritime negligence claims, the decision does not deprive Appellant of a remedy for the injuries he sustained. He applied for and received medical care and compensation benefits under New York's Volunteer Firefighter Benefit Law, or the VFBL. Jumping to the Suraki Seaman issue, as detailed in our briefing and as discussed by Appellant, Suraki Seaman remedy was created by case law because there was a gap in remedy between what was provided by the Jones Act and the Longshore Harbor Worker Compensation Act. With the 1972 amendment to the Longshore Harbor Worker Compensation Act, the gap was closed, and since then courts have been very selective on when they will deem someone to be a Suraki Seaman. And those times have been very fact-specific. What the Appellant is asking the court to do is to greatly expand who could be deemed a Suraki Seaman. In other words, the Appellant seeks to have the court deem any employee who cannot satisfy the Chandra's 30% guideline for Jones Act Seaman status to be deemed a Suraki Seaman. No, I didn't understand him saying that. I understood him to be saying that if he's doing a Seaman's work, as Suraki said, if he's doing a Seaman's work, which the plaintiff claims he was doing. Correct, Your Honor, but one part that counsel did not talk about was his allegation that he's crew and an employee of the Verplank Fire District. Well, Suraki didn't require that. Suraki didn't require that he be a... Well, I mean, the business of having to be an independent contractor, speaking for myself alone, I don't see any adequate support for that. That seems to me to come more or less out of nowhere. I mean, one decision that I don't see that... But I understand counsel to be saying that the Suraki remedy goes to people who are doing Seaman's work on a ship, regardless whether they're employed by the ship or the owner of the ship or not. Your Honor, assuming that to be the case, though, if you're an employee of the vessel owner, your right is under the Jones Act. And if you can't meet the 30% Chandra standard, then you're not entitled to Seaman status with remedy under the Jones Act. And what counsel and appellant are suggesting is that in that circumstance, you should be allowed to pursue Suraki Seaman status. As I understand the amendments to the Longshoreman Harbor Workers Act, they don't affect somebody who's not a covered employee. They simply don't address all of the restrictions on prior law, including Suraki, address covered employees. And if somebody's not a covered employee, those amendments simply don't affect prior law. So the Suraki rule would remain in effect as to persons who are not covered by the Longshoreman Harbor Workers Act, just as they did before those amendments. Well, the amendment, Your Honor, also took away the right to make an unseatworthiness claim. And another point that I wanted to address was counsel. They took away that. They didn't take that away. They did take that away. For covered employees. Right. Well, if somebody is not a covered employee, they didn't take it away. Again, Appellant in this case is an employee of- He's not a covered employee, covered by the Longshoreman Harbor Workers Act. That's what they changed to the extent that Suraki was taken away as a remedy. It was taken away for people who are covered employees under the LWHCA. Right. LHWCA. That's right, Your Honor. But there's no allegation that Mr. Dyckman was a covered employee. Right. That's why he wasn't affected by the taking away of the Suraki remedy. But as an employee, with all due respect, Your Honor, as an employee for Plank Fire District, his claim would be under the Jones Act as an employee suing his vessel owner. But Chandra sets a guideline. Why is it not under Suraki since the amendments to the act didn't affect in any way his relationship to that Suraki remedy? Since the act was quite explicit in taking it away for covered employees, but implicitly that's not taking it away for people who are not covered employees. It's taking it away for Longshoreman, essentially. The Suraki seaman status since the Suraki decision has been for non-crew temporarily aboard the vessel working in furtherance of the vessel's mission. In this particular case, Appellant is arguing that he was crew of the vessel. So that's… He was doing seaman's work. As crew of the vessel. But the crew of the vessel component that you are introducing, is that in Suraki itself? Or is that a subsequent interpretation of Suraki? It's a subsequent interpretation of Suraki because Suraki seaman status isn't really that frequently decided, Your Honor, as I mentioned. He's saying he was crew of the vessel, but he's not saying that you have to be crew of the vessel to qualify for the Suraki remedy if you are not someone who is covered by the Longshoreman and Harbor Workers Act. Well, the Raddat decision would disagree. I understand that's from the Southern Raddat, R-A-D-U-T. So there are district court decisions that have interpreted Suraki in a very narrow way in the way that you described. That's correct, Your Honor. Have we ever described it in that way? That is the Second Circuit. Well, as crew, Your Honor, no. As an independent contractor, yes. There's the Mahra-Mas decision from 1973 involving a hairdresser who was an independent contractor. Which is your point. Right. We have not described it that way. What you would ask us is to embrace the Raddat view of Suraki. Yes, Your Honor. That's very narrowly, very limited. And I think that makes sense, Your Honor, because, again, we're dealing with temporary individuals on board the vessel that are not crew and not at the direction of the officers of the vessel. And that's why they're giving this unseaworthiness cause of action to those individuals. One point that counsel did make on unseaworthiness, he said that why should Verplank be allowed to have a lesser duty than to some random third party? Well, unseaworthiness is not a cause of action that's available to just passengers of vessel. It's limited to seamen. And so, no, you would not have that cause of action to anybody on board the vessel because it's limited exclusively to seamen. If part of the job is – if the job is hybrid, in other words, it's largely land based, but there's a component of the job that will require me to go out on a boat or on a ship to perform my job function, why isn't that covered? Why doesn't Ceraki cover that or – yeah. Well, Judge Halpern – You seem to be making some distinction with respect to him as having been just almost accidentally on this boat. I wouldn't say that he's on the vessel accidentally, Your Honor, but as Judge Halpern found, and these are based on undisputed facts, Appellant had very, very little involvement with the marine operations of the Verplank Fire District. Percentages of his involvement that were anything related to marine are very small, and that's including training classes. Less than 30 percent. Much less than 30 percent. In fact, between 1 and 5 percent depending on the year, Your Honor. So can I just ask what is your view then? You're talking about whether or not the involvement with the running of the ship. This rule that I took you to be suggesting that you have to be an independent contractor, is your view that the person to be covered by Ceraki has to be both an independent contractor and doing seamen's work? Because, I mean, there are the cases with the hairdresser and this, that, and the other. So, I mean, it sounds as if – well, what is your view? Because now it sounds like you're saying, well, it has to be connected to the seamen's operations, what have you. But if your view is that an independent contractor qualifies, is it that – are you saying it has to be an independent contractor related to seamen's duties? Or are you saying if it's an independent contractor, it can be whatever, hairdresser. If it's not an independent contractor, it has to be seamen's duty? So it's our contention that it cannot be an employee. It must be an independent contractor. It cannot be crew of the vessel either. It's someone that's temporarily on board. It can be discussed as doing seamen's work, but courts have also discussed it as working in furtherance of the vessel's mission, right? So to be deemed a seaman, even under the Jones Act, you have to contribute to the function of the vessel, both in substantial duration and nature. So the contribution of the function of the vessel is inherent in any determination of seaman status, not just for the Jones Act, but we would argue as it relates to a Ceraki seaman status. So independent contractor, just to be clear. Independent contractor. As a starting point, it has to be an independent contractor, but also within the group of people who might be labeled independent contractor, it has to be related to the operations of the vessel? Or contributes to the function of the vessel. Like the hairdresser. I know I keep coming back to that case, but that's... That's essentially because if you're an employee, then you have the Jones Act. And Chandris has decided you can pursue a claim under the Jones Act as a guideline, 30% of your work for the employer is related to vessel activities. There's no court that says you can't meet that 30%. Well, then you can look to become a Ceraki seaman. This would greatly send ripples throughout the industry if that was the alternative. You don't meet the 30% Chandris guideline, now you can be considered a Ceraki seaman. Not one court has done that. Now if we don't adopt the RADAT restriction in our court, your adversary has argued that what's determinative here is the supremacy of federal law. But I haven't heard you address, I think it's in your brief. The Supreme Court has ruled in Yamaha in 1996 that the exercise of admiralty jurisdiction does not result in automatic displacement of state law. And then in a 2001 Norfolk decision, the Supreme Court said it is true that we have held admiralty accommodation of state remedial statutes to be constitutionally permissible. I haven't heard you, unless I missed it, I don't think you've argued that to us. I haven't yet, your honor. That's the second point that goes towards the third cause of action, which is the general maritime negligence claim, which was dismissed. Why doesn't it go to the Ceraki claim as well? I mean, I know because you say it has to be an independent contractor, but that's a district court decision and we don't necessarily adopt that as our law. So the Ceraki claim, unseaworthiness of a vessel, that is inherent in the maritime industry. General maritime negligence is not that inherent type of claim within the maritime industry. So we did not argue the application of the VFBL benefits over the unseaworthiness claim. Because just like wrongful death, for example, counsel mentioned the Purnell decision that involved wrongful death. Supreme Court's found that that's an inherent right cause of action to seek damages for wrongful death. We're dealing with a simple general negligence claim and the courts have decided, circuit courts, that that type of state law remedy can be enforced over a general maritime negligence claim. And so that's why we argued to dismiss it, the third cause of action on that ground. You agree that there's a circuit split? There is a circuit split. I would argue, though, that... You never made this argument in the district court. You never made the argument in the district court, I don't think, that the supremacy of federal law can be trumped in this case because of those Supreme Court holdings that you argued to us in your case. That's correct, and we didn't do that because there's no court that's commented on that, Your Honor. The Supreme Court has said it a couple of times, as you pointed out to us, but you didn't raise it in the district court. We did not because the circuit court's determining that issue only dealt with it as it relates to a general negligence claim. You didn't file your briefing after the district court made its determination. You filed your briefing before. Yes, Your Honor. And you didn't make that claim. We did not because it was related to an unseaworthiness issue as opposed to general maritime negligence claim. There are arguments that the plaintiff waived certain claims, and there are arguments that you waived certain claims in the district court. I'm wondering whether we should leave it to the district court to decide both those issues. We don't necessarily agree with that. We might, but we might not. I understand, Your Honor. But you're asking us to grapple with this legal issue of effectively the state law is the exclusive remedy in the first instance on appeal because you won below. As it relates to general maritime negligence. Yes, Your Honor. Thank you very much. Okay. We'll hear some rebuttal, I believe. Thank you. Your Honor, I'd like to address what may be a legal misconception and then a factual misconception. Your Honor asked if the Second Circuit, if this court, had ever held that this Iraqi claim is limited to independent contractors, and Judge LaValle referred to the redute exception and whether this court would adopt it. There is no redute exception. And there is no court, any court, not just this court, no circuit court, no district court, has ever reached the ruling that Seraki is limited to independent contractors. The reduct case, Your Honors, involved the plaintiff there was an independent contractor. And in the course of ruling that that plaintiff had a Seraki seaman claim, there was a phrase. The court said this doctrine was developed principally, was developed specifically for independent contractors. Factually correct. It didn't address the question and it didn't have the question before it. Is it the case that it's limited to independent contractors? Employees are not benefited from it. It was a rule of law that was created from a phrase in an unreported decision that had nothing to do with the issue that's before the court. Yet that was the argument below. Independent contractors, they don't get the benefit of the Seraki. And then when you look at the Supreme Court's decision, Reed v. S.S. Yacob, as pointed several times, as we pointed several times in Seraki, a shipowner's obligation of seaworthiness cannot be shifted about, limited, or escaped by contracts or the absence of contracts. The shipowner's obligation is rooted not in contracts but in the hazards of the work. If you were to take that standard and say, what's the exact opposite of the real rule? You'd get the district court ruling below. The key, 383 of the appendix, is whether he's an independent contractor under New York law. Now, there was no claim in the Movens papers that he wasn't subject to a Siemens hazard. There was no claim that he didn't do Siemens work. And there was no crew aboard the ship apart from the four firefighters. They are it. They are the only people aboard the vessel. They have to take a course in boating safety to be aboard the vessel because someone, obviously, is going to tie up. Someone is, other than the operator, is going to tie up. Is, by virtue of the fact that he is an employee, is he covered by the Jones Act? He's not covered by the Jones Act, which is why we're not contesting that ruling, that he's not covered by the Jones Act. Because the Jones Act, the case law requires you to spend, it's not a hard line, but 30 percent give or take. And he's not near 30 percent. He's not a Jones Act Seaman. And I'm not contesting that. That's why we didn't challenge the dismissal of that claim. It was correct, the dismissal of that claim. But, of course, you don't have to be a Jones Act Seaman to be a Saraki Seaman. And that's why the Saraki was decided the way it was. The last point. It is a little odd to me, but not fundamentally odd, that this critical term, Seaman, varies in the context of what ought to be relatively uniform law. But it's a critical term. We talk about the work of a Seaman. We talk about Seaman's hazard. Where do I look? And maybe this is a false enterprise that I'm thinking about. Where do I look? Your Honor, it's actually kind of amusing. The Supreme Court U.S. twice said that it was, quote, odd but true, that the term Seaman is not anywhere defined in the Jones Act. It does not necessarily answer the question. No, but the answer is this. The Jones Act was enacted in 1920. In 1927, the Longshoremen's Harbor Worker Compensation Act is enacted. It doesn't use the term Seaman. It uses the terms a member of the crew, a member of the vessel. The Supreme Court later decides that those two terms are mutually exclusive. If you're a Seaman, you're not a Longshoremen's Harbor Worker Compensation Act recipient and vice versa. So, therefore, since we do have a definition in the Longshoremen's Harbor Worker Compensation Act for the term member, and since it's the opposite of what a Jones Act Seaman is, it was, quote, odd but true. The Supreme Court said that where we look for a definition of Seaman is not in the Jones Act, but in the Longshoremen's Harbor Worker Compensation Act. Odd but true. If the motion had been premised. Then the Ceracki decision established a new way of being deemed a Seaman. If you're somebody who's not otherwise covered as a Seaman, but you are doing the work of a Seaman. Your Honor, I would say it would establish a new kind of Seaman, that there's a Seaman other than a Jones Act Seaman. These people are, by and large, they're land-based workers. They're most often Longshoremen. They're not Jones Act Seaman, by and large, and here, too, not Jones Act Seaman. But these people and the Ceracki rationale. There are two ways of being a Seaman. Yes, well, there are two kinds of Seaman, if you like. Yes. And the rationale, apart from the fact that there was no, in the Supreme Court's view, no good reason for the other answer was that as a matter of practicality, if they didn't have that ruling, then the various work aboard the vessel could be shipped out to shore-based people, to whom there would no longer be any duty of seaworthiness, and, therefore, it could be avoided in that fashion. And that's what creates the lack of uniformity. They're just trying to cover cases based on a sense of justice. Well, a sense of, yes, I guess at bottom you could say it's based on a sense of justice, but it's also based upon a perception that these people, however long or short they're aboard the vessel, they're doing a Seaman's work. They're subject to a Seaman's hazard, so while they are in that position, they should be protected as Seaman are protected under the Jones Act while they're engaged in that position. Thank you very much. Thank you, Your Honor. Who was in charge? Was there somebody in charge? Was there a superior officer? Who was running the ship, steering it, and so forth? The testimony was that the first four volunteer firefighters who show up, they get to go on the vessel, but there's a separate course for operation of the vessel. They all have to take, to get on that vessel at all, a boating safety course, but the operator has to take an operation course, and there was one individual who aboard the vessel, Michael Eichhorn, who had taken and passed that course. So the first four people who show up in response to the call, provided one of them is entitled to operate the vessel, they go out on the call, and all of them have been trained in boat safety. And then to the extent that somebody is needed to do things like attend to the ship as it, if it arrives at a pier or a dock or something like that, the others will have to do those things? Yes, Your Honor. And the test, if you- The one who's running the engines and steering the boat. Well, in this instance- And the bow to fend off a landing. In this instance, Dyckman was the one who got the vessel ready, only because he arrived there first. But at page 149 to 151 of the appendix, you'll see that this wasn't the first time that he tied off a vessel. He had done it before. When they're in the act of approaching the police vessel, and the intent is they are going to moor there, someone's going to tie it off. They're going to tie themselves to the police vessel? That was unclear as to what he was going to tie off to. He didn't say. What does tied off mean? The vessel's going to be brought to a stop. When it's brought to a stop, he's literally going to take rope and tie it, presumably- To the police vessel. To the police vessel, but he didn't quite say that. And instead, they ran into the police vessel, and that's the accident. Thank you very much. Thank you. We'll reserve a decision.